No. 25-_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

PORT OF SEATTLE, ALASKA AIR GROUP, AND DELTA AIR LINES INC.,

*Petitioners*,

*v.*

CINDY CODONI, MICHELE GEER, HORACE CATHCART, AMY FRANCE, AND
TAMARA CHAKOS, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED,

*Respondents*.

On Petition For Permission To Appeal An Order Of The
United States District Court For The Western District Of Washington
No. 2:23-cv-795-JNW (Hon. Jamal N. Whitehead)

## PETITION FOR PERMISSION TO APPEAL
## PURSUANT TO 28 U.S.C. § 1292(b)

Shay Dvoretzky
John H. Beisner
Parker Rider-Longmaid
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Ave., N.W.
Washington, D.C. 20005
(202) 371-7000

*Attorneys for Petitioner*
*Alaska Air Group*

Daniel W. Nelson
Amir C. Tayrani
Stacie Fletcher
Jessica L. Wagner
Joseph Edmonds
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

*Attorneys for Petitioner*
*Delta Air Lines, Inc.*

*(additional counsel on inside cover)*

Beth S. Ginsberg
Maren R. Norton
Rita V. Latsinova
Vanessa Soriano Power
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
(206) 624-0900

*Attorneys for Petitioner*
*Port of Seattle*

David Balser
Paul J. Watford
David Willingham
Arwen R. Johnson
Madison H. Kitchens
Kelly Perigoe
KING & SPALDING LLP
11180 Peachtree St., NE
Atlanta, GA 30309
(404) 572-4600

Malaika M. Eaton
Gregory J. Hollon
MCNAUL EBEL NAWROT &
HELGREN PLLC
600 University Street, Suite 2700
Seattle, WA 98101
(206) 467-1816

*Attorneys for Petitioner*
*Delta Air Lines, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Petitioner Alaska Air Group, Inc.[*] states that Alaska Airlines, Inc., is a wholly owned subsidiary of Alaska Air Group, Inc., a publicly held corporation. Blackrock, Inc., and The Vanguard Group each own 10% or more of Alaska Air Group, Inc.'s stock. No other publicly held corporation holds 10% or more of Alaska Airlines, Inc.'s or Alaska Air Group, Inc.'s stock.

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Petitioner Delta Air Lines, Inc. states that it is a publicly held corporation that has no parent corporation. No publicly held corporation owns 10% or more of Delta Air Lines, Inc.'s stock. The Vanguard Group, Inc. owns 10% or more of its stock.

---

[*] Alaska Air Group, Inc., a holding company that does not own or operate any aircraft and did not engage in any of the conduct at issue in this suit, provides this corporate disclosure statement without prejudice to its arguments that the company's subsidiary, Alaska Airlines, Inc., is the proper defendant in this case.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................. 1

QUESTIONS PRESENTED .......................................................... 4

STATEMENT ................................................................................. 4

    I.    The Federal Government Pervasively Regulates Aircraft Operations, Flight Paths, And Emissions. ................................................................. 4

    II.   Factual And Procedural Background ................................... 10

ARGUMENT ............................................................................... 12

    I.    The Jurisdictional And Preemption Issues Present Controlling Questions Of Law That Could Materially Advance The Termination Of This Litigation. ................................................................. 13

    II.   At A Minimum, Reasonable Minds Can Differ On The District Court's Jurisdictional And Preemption Holdings. ............................................ 16

        A.    District Courts In This Circuit Disagree On Application Of The Collateral-Attack Doctrine. .............. 17

        B.    At A Minimum, Reasonable Minds Differ On The Applicability Of Express Preemption. ...................... 21

        C.    At A Minimum, Reasonable Minds Differ On The Applicability Of Field Preemption. ........................... 26

CONCLUSION ............................................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abdullah v. Am. Airlines, Inc.*,
181 F.3d 363 (3d Cir. 1999) ............................................................ 14

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000)............................................................ 12

*Am. Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995)......................................................................... 22

*Americopters, LLC v. FAA*,
441 F.3d 726 (9th Cir. 2006)............................................................ 19

*Arizona v. United States*,
567 U.S. 387 (2012)......................................................................... 27

*California v. Dep't of Navy*,
431 F. Supp. 1271 (N.D. Cal. 1977).................................................. 29

*California v. Dep't of Navy*,
624 F.2d 885 (9th Cir. 1980)............................................ 25, 26, 28, 29

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982)........................................................... 13

*City of Burbank v. Lockheed Air Terminal Inc.*,
411 U.S. 624 (1973)............................................................... 2, 27, 28

*Charas v. Trans World Airlines, Inc.*,
160 F.3d 1259 (9th Cir. 1998)........................................................... 24

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010)....................................................... 16, 26

*Crist v. Leippe*,
138 F.3d 801 (9th Cir. 1998)............................................................. 17

*Exxon Corp. v. City of New York*,
548 F.2d 1088 (2d Cir. 1977) ........................................................... 15

*Fudge v. Delta Air Lines, Inc.*,
  2024 WL 4445985 (C.D. Cal. Oct. 4, 2024) ........................................ 23

*Ginsberg v. Nw., Inc.*,
  695 F.3d 873 (9th Cir. 2012) ................................................................ 22

*Martin ex rel. Heckman v. Midwest Express Holdings, Inc.*,
  555 F.3d 806 (9th Cir. 2009) ............................................................... 26

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
  22 F.4th 1125 (9th Cir. 2022) ...................................................... 13, 15

*Knee Deep Cattle Co. v. Bindana Inv. Co.*,
  94 F.3d 514 (9th Cir. 1996) ................................................................. 13

*In re Korean Air Lines Co.*,
  642 F.3d 685 (9th Cir. 2011) ....................................................... 14, 23

*Krauss v. FAA*,
  2016 WL 1162028 (N.D. Cal. Mar. 24, 2016) .................. 17, 18, 19, 20

*Kuehner v. Dickinson & Co.*,
  84 F.3d 316 (9th Cir. 1996) ................................................................. 16

*Magassa v. Mayorkas*,
  52 F.4th 1156 (9th Cir. 2022) ............................................................. 18

*Mais v. Gulf Coast Collection Bureau, Inc.*,
  768 F.3d 1110 (11th Cir. 2014) ........................................................... 14

*McKay v. City & Cnty. of San Francisco*,
  2016 WL 7425927 (N.D. Cal. Dec. 23, 2016) .................... 17, 19, 20, 21

*Miller v. C.H. Robinson Worldwide, Inc.*,
  976 F.3d 1016 (9th Cir. 2020) ............................................................. 24

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) ...................................................................... 21, 24

*Nat'l Fed'n of the Blind v. United Airlines Inc.*,
  813 F.3d 718 (9th Cir. 2016) ............................................................... 14

*Nw., Inc. v. Ginsberg*,
  572 U.S. 273 (2014) .............................................................. 22, 23, 25

iv

*Or. Coast Scenic R.R., LLC v. Or. Dep't of State Lands*,
841 F.3d 1069 (9th Cir. 2016) ............................................ 13

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ....................................... 12, 16

*Riegel v. Medtronic, Inc.*,
552 U.S. 312 (2008) ............................................................ 25

*San Diego Unified Port Dist. v. Gianturco*,
651 F.2d 1306 (9th Cir. 1981) (per curiam) ................... 27, 28

*Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*,
295 F.3d 918 (9th Cir. 2002) ................................................ 6

*Tur v. FAA*,
104 F.3d 290 (9th Cir. 1997) ..................... 4, 13, 14, 17, 18

*United Airlines, Inc. v. Mesa Airlines, Inc.*,
219 F.3d 605 (7th Cir. 2000) ....................................... 14, 23

*United States v. Woodbury*,
263 F.2d 784 (9th Cir. 1959) .............................................. 14

*Washington v. Gen. Motors Corp.*,
406 U.S. 109 (1972) ............................................................ 28

*Witty v. Delta Air Lines, Inc.*,
366 F.3d 380 (5th Cir. 2004) ....................................... 14, 23

*Wolens v. Am. Airlines, Inc.*,
626 N.E.2d 205 (Ill. 1993) ................................................. 22

**Statutes**

28 U.S.C. § 1292 ............................................ 3, 12, 13, 15, 16

42 U.S.C. § 7571 ............................................................. 5, 9

42 U.S.C. § 7573 ............................................................. 4, 25

42 U.S.C. § 7607 ........................................................... 11, 18

49 U.S.C. § 40102 ............................................................... 5

49 U.S.C. § 40103 ............................................................. 4, 5

49 U.S.C. § 41713 ........................................................ 4, 21, 22

49 U.S.C. § 44701 ............................................................... 8

49 U.S.C. § 44704 ............................................................... 8

49 U.S.C. § 44714 ............................................................... 8

49 U.S.C. § 46110 ......................................................... 11, 18

**Regulatory and Administrative Authorities**

14 C.F.R. Part 21 ............................................................... 8

14 C.F.R. Part 25 ............................................................... 8

14 C.F.R. Part 26 ............................................................... 8

14 C.F.R. Part 33 ............................................................... 8

14 C.F.R. Part 34 ............................................................ 8, 9

14 C.F.R. Part 43 ............................................................... 9

14 C.F.R. Part 71 ............................................................... 7

14 C.F.R. Part 91 ............................................................... 7

14 C.F.R. Part 92 ............................................................... 7

14 C.F.R. Part 93 ............................................................... 7

14 C.F.R. Part 94 ............................................................... 7

14 C.F.R. Part 95 ............................................................... 7

14 C.F.R. Part 96 ............................................................... 7

14 C.F.R. Part 97 ............................................................... 7

14 C.F.R. Part 121 ......................................................... 7, 8, 9

14 C.F.R. Part 125 ............................................................. 8

14 C.F.R. Part 150 ............................................................. 5

14 C.F.R. Part 151 ............................................................... 5

14 C.F.R. Part 152 ............................................................... 5

14 C.F.R. Part 153 ............................................................... 5

14 C.F.R. Part 154 ............................................................... 5

14 C.F.R. Part 155 ............................................................... 5

14 C.F.R. Part 156 ............................................................... 5

14 C.F.R. Part 157 ............................................................... 5

14 C.F.R. Part 158 ............................................................... 5

14 C.F.R. Part 159 ............................................................... 5

14 C.F.R. Part 160 ............................................................... 5

14 C.F.R. Part 161 ............................................................... 5

14 C.F.R. Part 162 ............................................................... 5

14 C.F.R. Part 163 ............................................................... 5

14 C.F.R. Part 164 ............................................................... 5

14 C.F.R. Part 165 ............................................................... 5

14 C.F.R. Part 166 ............................................................... 5

14 C.F.R. Part 167 ............................................................... 5

14 C.F.R. Part 168 ............................................................... 5

14 C.F.R. Part 169 ............................................................... 5

40 C.F.R. Part 1031 ............................................................. 9

Control of Air Pollution From Aircraft Engines: Emissions
    Standards and Test Procedures, 87 Fed. Reg. 72,312 (Nov.
    23, 2022) ....................................................................... 9

FAA, Documented CatEx, Sea-Tac International Arrivals
    Facility (Apr. 22, 2015) ................................................. 6

FAA, Finding of No Significant Impact (FONSI) & Record of
   Decision (ROD) for the Implementation of RNAV/RNP Pro-
   cedures at Seattle-Tacoma International Airport (Oct. 31,
   2012) .............................................................................................. 7

FAA, Order 1050.1F (July 16, 2015) ..................................................... 6

FAA, Order 8130.2K (Aug. 28, 2024) .................................................... 8

FAA, Record of Decision for the Master Plan Update
   Development Actions Sea-Tac International Airport,
   Seattle, Washington (July 3, 1997) ................................................ 6

FAA, Terminal Procedures Publication, Northwest (Feb. 20, 2025) ....... 7

### INTRODUCTION

This class action was brought on behalf of hundreds of thousands of people who have resided or owned property within a five-mile radius of Seattle-Tacoma International Airport ("Sea-Tac") in the preceding four years. Plaintiffs allege harm from the emissions of aircraft operating on federally mandated flight paths when taking off and landing at Sea-Tac. Plaintiffs do not allege that Defendants (two major airlines and the local government district that operates the airport) have violated any of the myriad federal laws and regulations governing flight operations at Sea-Tac. Plaintiffs instead contend that, even if Defendants' operations comply fully with federal law, Defendants may still be held liable under state tort law for the damage class members have allegedly suffered from normal aviation operations.

Plaintiffs' claims are barred by limits on a district court's subject-matter jurisdiction and well-settled principles of federal preemption. Every aspect of the conduct that Plaintiffs allege gives rise to liability under state tort law is controlled by an array of federal regulations and standards. As the Supreme Court has noted, "Planes do not wander about in the sky like vagrant clouds. They move only by federal permis-

sion, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands." *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 633-34 (1973) (citation omitted). Given the interstate and international nature of air travel and the need for uniformity in this area, federal control of flight operations is "intensive and exclusive," leaving no room for regulation by state tort law. *Id.* at 633 (citation omitted). Yet the district court denied Defendants' motions to dismiss and allowed this sprawling class action to proceed to discovery and, potentially, trial.

As the district court acknowledged in certifying its order for interlocutory review, this Court's intervention is warranted now, before this action proceeds any further. Plaintiffs' novel theory seeks to impose state tort liability for normal flight operations directed by, and conducted in full compliance with, federal law. If permitted to proceed, suits like this one could be brought by residents living near every airport in the country. Airlines and airport operators could be forced to defend costly class actions under the tort regimes of 50 different States, vitiating the exclusive and uniform federal control of flight operations.

Each of the prerequisites for interlocutory review under 28 U.S.C. § 1292(b) is satisfied here. The district court correctly observed that "[t]his case … implicates important issues about federal aviation regulation and the scope of state tort remedies affecting airline operations" with nationwide significance. Ex. 2 (Dkt. 90), at 2.[1] The jurisdictional and preemption issues "are controlling questions of law that could terminate the entire litigation if resolved in Defendants' favor." *Id.* And there are substantial grounds for difference of opinion, as evidenced by the fact that other courts have dismissed similar claims at the pleading stage. "Early appellate guidance would benefit both the parties and the [district court] by potentially avoiding extensive discovery, motion practice, and trial proceedings if the claims are ultimately found to be preempted or jurisdictionally barred." *Id.*

Unless this Court steps in now and rejects Plaintiffs' novel theory of liability, airlines and airport operators across the country will likely be forced to spend precious and limited resources defending against copycat class actions, including through trial. The petition should be granted.

---

[1] Citations to "Dkt. __" refer to the district court's docket in *Codoni v. Port of Seattle*, No. 23-cv-00795-JNW (W.D. Wash.).

## QUESTIONS PRESENTED

1.     Whether the collateral-attack doctrine bars state-law claims seeking to impose tort liability for purported damages from federally regulated aviation operations because such claims are "inescapably intertwined" with the federal agency orders setting flight paths and aircraft design and emissions standards. *Tur v. FAA*, 104 F.3d 290, 292 (9th Cir. 1997).

2.     Whether state-law claims seeking to impose tort liability for purported damages from federally regulated aviation operations are (1) expressly preempted under the Airline Deregulation Act, 49 U.S.C. § 41713, because they "relat[e] to" the airlines' "route[s]" and "service[s]," or under the Clean Air Act, 42 U.S.C. § 7573, because they seek to impose emissions standards not identical to federal law; or (2) foreclosed by field or conflict preemption given the pervasive federal regulation of airspace management, aviation safety, and aircraft design and emissions.

## STATEMENT

### I.     The Federal Government Pervasively Regulates Aircraft Operations, Flight Paths, And Emissions.

"The United States Government has exclusive sovereignty of airspace of the United States," 49 U.S.C. § 40103(a)(1), including all "air-

space needed to ensure safety in the takeoff and landing of aircraft," *id.* § 40102(a)(32). Consistent with that exclusive authority, Congress authorized the Federal Aviation Administration ("FAA") to establish regulations to "protec[t] individuals and property on the ground," "ensure the safety of aircraft," and "preven[t] collision[s]." *Id.* § 40103(b)(1)-(2). And Congress authorized the Environmental Protection Agency ("EPA"), in consultation with the FAA, to establish aircraft emissions standards to reduce "air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7571(a)(2)(A)-(B). Together, the FAA and EPA have promulgated thousands of regulations and orders implementing these directives. Plaintiffs do not allege that Defendants violated any of these regulations.

***Airport Operations.*** Before any airplane takes off or lands, the FAA reviews and approves the airport's location, design, and construction, the siting and direction of its runways, and any expansions. *See* 14 C.F.R. Parts 150-169. As part of this process, the FAA evaluates the environmental impacts of airport operations, including the impact on air

5

quality and the health and safety of the local community. FAA, Order 1050.1F §§ 3-1.2, 4-1 (July 16, 2015).[2]

The FAA has repeatedly made such determinations for Sea-Tac. For example, before approving construction of Sea-Tac's third runway, the FAA concluded that its air quality impact would be "*de minimis*" and would "conform[] to the … National Ambient Air Quality Standards." FAA, Record of Decision for the Master Plan Update Development Actions Sea-Tac International Airport, Seattle, Washington 23 (July 3, 1997).[3] FAA similarly approved the construction of Sea-Tac's new International Arrivals Facility, concluding it would not "result in emissions that would equal or exceed the applicable de minimis threshold rates." FAA, Documented CatEx, Sea-Tac International Arrivals Facility, Att. E at 5 (Apr. 22, 2015).[4]

---

[2] https://www.faa.gov/documentLibrary/media/Order/FAA_Order_1050_1F.pdf. The Court may take judicial notice of the FAA and EPA orders cited herein. *Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 924 n.3 (9th Cir. 2002).

[3] https://www.faa.gov/sites/faa.gov/files/airports/environmental/environmental_documents/rod_seattle.pdf.

[4] Published in App'x 2, Adoption of Existing Environmental Document: Seattle-Tacoma International Airport (STIA): International Arrivals Facility (May 5, 2015), https://www.portseattle.org/sites/default/files/2018-03/IAF_SEPA_Supplemental_Checklist_SIGNED.pdf.

***Flight Paths.***  The FAA dictates the flight paths aircraft must take, including the altitude, direction, and angles for takeoff and landing. *E.g.*, 14 C.F.R. §§ 91.153-.183, 121.91-.107, 121.189, 121.555, 121.657-.661; *see generally* 14 C.F.R. Parts 71, 91-97.  For aircraft arriving at or departing from Sea-Tac, the FAA has set detailed flight paths with specific rates of descent or ascent at specific altitudes.  *See* FAA, Terminal Procedures Publication, Northwest Z15-Z30, 729-77 (Feb. 20, 2025).[5] These "routes and procedures" were implemented after the FAA carefully analyzed their environmental and safety impacts, including on "persons and property on the ground."  FAA, Finding of No Significant Impact (FONSI) & Record of Decision (ROD) for the Implementation of RNAV/RNP Procedures at Seattle-Tacoma International Airport 1-2 (Oct. 31, 2012).[6]  The resulting flight paths begin 40 to 140 miles from Sea-Tac and were designed to minimize fuel burn and reduce emissions. *Id.* at 3.

---

[5] https://aeronav.faa.gov/upload_313-d/terminal/2025-02-20/NW1.pdf.

[6] https://www.faa.gov/sites/faa.gov/files/air_traffic/environmental_issues/ared_documentation/ea_SEA_GreenerSkies_Vol1_FONSI_ROD_121030.pdf.

***Aircraft and Aircraft Engines.*** Each commercial airplane must meet thousands of exacting standards governing "the design, material, construction, quality of work, cybersecurity, and performance of aircraft [and] aircraft engines." 49 U.S.C. § 44701(a)(1); *e.g.*, 14 C.F.R. Parts 25-26 (airworthiness standards for commercial aircraft); 14 C.F.R. Parts 33-34 (standards for aircraft engines and fuel systems). The FAA also regulates "the composition or chemical or physical properties of an aircraft fuel or fuel additive to control or eliminate aircraft emissions" that "endanger the public health or welfare," 49 U.S.C. § 44714(1), and has issued many regulations pertaining to fuel tanks, fuel systems, and fuel supply, *e.g.*, 14 C.F.R. §§ 25.951-.1001, 121.229-.235, 121.639-.647.

The FAA evaluates new versions of commercial aircraft to ensure their compliance with these federal standards—including "emissions"—before airlines use them. 14 C.F.R. § 21.21(b)(1); *see also* 49 U.S.C. § 44704; 14 C.F.R. Parts 21, 25, 125; FAA, Order 8130.2K (Aug. 28, 2024).[7] Once an aircraft enters service, additional regulations cover

---

[7] https://www.faa.gov/regulations_policies/orders_notices/index.cfm/go/document.information/documentID/1043002.

8

maintenance, 14 C.F.R. §§ 43.1-.17, with heightened requirements for commercial air carriers, *id.* §§ 121.361-.380, 121.1101-.1119.

*Aircraft Emissions.* Congress authorized the EPA to issue "emission standards applicable to the emission of any air pollutant from … aircraft engines which in [its] judgment causes, or contributes to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7571(a)(2)(A); *see also id.* § 7572(a) (FAA ensures compliance with EPA standards). These regulations set the acceptable limits for emissions of particulate matter, hydrocarbons, carbon monoxide, and nitrogen oxides—the chemicals Plaintiffs contend are damaging their properties. *Compare* 40 C.F.R. §§ 1031.30-.140; 14 C.F.R. §§ 34.20-.31, *with* Dkt. 43 ¶ 2. In its most recent emissions rule, the EPA evaluated the health implications of aircraft emissions on communities near airports, citing the same air-quality studies near Sea-Tac that form the basis of Plaintiffs' complaint. *Compare* Control of Air Pollution from Aircraft Engines: Emission Standards and Test Procedures, 87 Fed. Reg. 72,312, 72,321-22 (Nov. 23, 2022), *with* Dkt. 43 ¶¶ 61-66.

9

## II.   Factual And Procedural Background

In 2023, Plaintiffs filed suit on behalf of putative classes of residents and property owners within a five-mile radius of Sea-Tac, alleging state-law claims including negligence, battery, trespass, and nuisance against Alaska Air Group and Delta Air Lines, Inc. (together, "Airlines"). Dkt. 43.  Plaintiffs asserted these same claims (except battery), plus an inverse condemnation claim, against the Port of Seattle, the municipal corporation that operates Sea-Tac.  *Id.*

Plaintiffs allege that by "travelling to and from Sea-Tac Airport," at "altitudes lower than 3,000 feet," aircraft "disperse" "pollutants" from their "exhaust" and "fuselages" that "are sucked downwind and accumulate in local communities."  Dkt. 43 ¶¶ 4, 53-64.  The complaint repeatedly ties Plaintiffs' alleged harms to the path and frequency of the Airlines' flights over their homes.  *See, e.g.*, *id.* ¶ 50 (properties "contaminated" by "pollutants that are the direct result of Defendants' flights in and out of Sea-Tac"); *id.* ¶ 61 ("communities below aircraft flight paths … are exposed to significant … air pollution"); *see also id.* ¶¶ 4, 27, 58-59, 63, 67 n.9.  Although Plaintiffs' claims focus on the Airlines' operations at Sea-Tac, their state-law theories could be readily extended to other

airports. *See id.* ¶¶ 72, 74 (alleging similar harm at Boston Logan International Airport and elsewhere).

Defendants moved to dismiss all claims. Dkts. 49, 50. They argued that Plaintiffs' claims are an impermissible collateral attack on numerous FAA and EPA orders that set flight paths and emissions standards and thus can be brought only in a federal court of appeals. *See* 49 U.S.C. § 46110 (review of FAA orders); 42 U.S.C. § 7607(b)(1) (review of EPA orders). Defendants also argued that Plaintiffs' claims are preempted expressly by the Airline Deregulation Act ("ADA") and the Clean Air Act ("CAA") and impliedly by field and conflict preemption.

The district court denied the motions to dismiss. Ex. 1 (Dkt. 73). The court rejected Defendants' collateral-attack argument because it could not "conclude" at this point "that Plaintiffs' state-law claims are inescapably intertwined with the review of a particular agency order." *Id.* at 14. It rejected ADA and CAA express preemption as "premature." *Id.* at 24. The court then rejected field preemption by misconstruing the relevant field as "airplane pollution and its effects on people and property." *Id.* at 28. And it rejected conflict preemption for similar reasons. *See id.* at 30.

11

On February 18, 2025, the court granted Defendants' motion for certification, concluding that each of the criteria in 28 U.S.C. § 1292(b) was satisfied.  Ex. 2.

## ARGUMENT

Interlocutory review is appropriate under 28 U.S.C. § 1292(b) where an order "'[1] involves a controlling question of law as to which [2] there is substantial ground for difference of opinion' and [3] where 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687-88 (9th Cir. 2011) (quoting 28 U.S.C. § 1292(b)); *see Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (emphasizing "duty" of courts to allow appeal "when the statutory criteria are met"). All three requirements for certification are satisfied here.  Resolving the jurisdictional and preemption issues will ensure that the parties do not expend substantial resources on discovery in a case that is not properly before the district court and raises a substantial risk of unfounded copycat class actions across the country.

12

## I.   The Jurisdictional And Preemption Issues Present Controlling Questions Of Law That Could Materially Advance The Termination Of This Litigation.

A.   As the district court recognized, there is no dispute that "[t]he jurisdictional and preemption issues presented are controlling questions of law that could terminate the entire litigation if resolved in Defendants' favor." Ex. 2, at 2. "The existence of subject matter jurisdiction"—including whether a claim asserts a "collateral challenge to [an] agency order"—is a question of law. *Knee Deep Cattle Co. v. Bindana Inv. Co.*, 94 F.3d 514, 516 (9th Cir. 1996); *Tur*, 104 F.3d at 292 (citation omitted). A "conclusion about the extent of federal preemption" is also a legal question. *Or. Coast Scenic R.R., LLC v. Or. Dep't of State Lands*, 841 F.3d 1069, 1072 (9th Cir. 2016).

Here, those questions are "controlling" because their resolution on appeal "could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982); *see also ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022).

Congress enacted Section 1292(b) to facilitate interlocutory appeals of "legal questions," including "those relating to jurisdiction," that, "if de-

cided in favor of the appellant, would end the lawsuit." *United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959). If the Court were to adopt Defendants' position that Plaintiffs' claims are an improper collateral attack on FAA and EPA orders, that would require dismissal of the entire action for lack of subject-matter jurisdiction. *E.g.*, *Tur*, 104 F.3d at 292, 294. That makes certification appropriate. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1115, 1119-21 (11th Cir. 2014).

Likewise, if Defendants were to prevail on appeal on any of their preemption arguments, that would also compel dismissal. *E.g.*, *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 740 (9th Cir. 2016); *In re Korean Air Lines Co.*, 642 F.3d 685, 697 (9th Cir. 2011). Courts routinely grant review of interlocutory appeals at the motion-to-dismiss stage to address preemption issues, including claims against airlines involving ADA express, field, and conflict preemption, as well as cases involving CAA preemption. *See, e.g.*, *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 383-86 (5th Cir. 2004) (certified appeal of ADA express, field, and conflict preemption); *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 608 (7th Cir. 2000) (certified appeal of ADA express preemption); *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 366-68 (3d Cir.

14

1999) (certified appeal of aviation safety field preemption); *see also Exxon Corp. v. City of New York*, 548 F.2d 1088, 1089-91 (2d Cir. 1977) (certified appeal of CAA express preemption).  The Court should do the same here.

B.  Because the collateral-attack and preemption issues are controlling, their prompt resolution "may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), by "'appreciably shorten[ing] the time, effort, or expense of conducting'" the litigation, *ICTSI*, 22 F.4th at 1131 (citation omitted).  As the district court observed, "[e]arly appellate guidance would benefit both the parties and the Court by potentially avoiding extensive discovery, motion practice, and trial proceedings if the claims are ultimately found to be preempted or jurisdictionally barred."  Ex. 2, at 2; *see* Dkt. 79, at 1 n.1 (Plaintiffs agreeing that "reversal of the Court's order would advance the ultimate termination of the litigation").

Discovery will be time-consuming and costly for all parties given the scope of Plaintiffs' claims and proposed classes and the need for extensive expert discovery about the purported environmental harms, alleged reductions in Plaintiffs' property values, and Plaintiffs' request for medical monitoring.  Prompt appellate review of the case-dispositive ju-

risdictional and preemption issues is therefore warranted to head off "needless expense and delay of litigati[on]." *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996). Those considerations are particularly compelling here given the well-founded concerns about copycat class actions: follow-on suits would also require onerous discovery, impose significant costs on defendants, waste judicial resources, and potentially disrupt federally mandated airline and airport operations.

## II. At A Minimum, Reasonable Minds Can Differ On The District Court's Jurisdictional And Preemption Holdings.

A "substantial ground for difference of opinion," 28 U.S.C. § 1292(b), exists where "reasonable jurists *might* disagree on [the] issue's resolution," *Reese*, 643 F.3d at 688 (emphasis added). "[T]raditionally," this element is met either when "novel and difficult questions of first impression are presented" or when courts "are in dispute on the question," and the court of appeals "has not spoken on the point." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (citation omitted).

The collateral-attack and preemption questions satisfy these standards. As the district court found, there is actual disagreement among jurists here: other courts "have dismissed similar claims at the pleading

stage, finding them 'inescapably intertwined' with agency orders or preempted by federal law." Ex. 2, at 2 (citation omitted).

## A. District Courts In This Circuit Disagree On Application Of The Collateral-Attack Doctrine.

As the district court stated in granting certification, there is direct disagreement between its decision declining to apply the collateral-attack doctrine and decisions of other courts within this Circuit dismissing claims under that doctrine at the Rule 12 stage. Ex. 2, at 2 (citing *McKay v. City & Cnty. of San Francisco*, 2016 WL 7425927 (N.D. Cal. Dec. 23, 2016); *Krauss v. FAA*, 2016 WL 1162028 (N.D. Cal. Mar. 24, 2016)); *see also Tur*, 104 F.3d at 292.

In both *McKay* and *Krauss*, district courts granted motions to dismiss similar suits by plaintiffs complaining of "'disturbance and pollution' to ... their properties" from "flights over their homes." *McKay*, 2016 WL 7425927, at *1, *7; *see Krauss*, 2016 WL 1162028, at *3. The courts concluded that these suits—even if couched in the guise of tort claims—were "inescapably intertwined" with the FAA orders authorizing the flight paths over plaintiffs' properties and thus impermissible collateral attacks on these orders that could be brought only in a federal court of appeals. *McKay*, 2016 WL 7425927, at *7 (quoting *Crist v. Leippe*, 138

F.3d 801, 803 (9th Cir. 1998)); *Krauss*, 2016 WL 1162028, at *4; *see* 49 U.S.C. § 46110 (directing appellate review of FAA orders).

The district court's decision directly conflicts with *McKay* and *Krauss*. As in those cases, Plaintiffs brought tort claims alleging pollution from the Airlines' "flight paths" over their "home[s]." Dkt. 43 ¶¶ 4, 27, 57-59, 61, 63-64. And Defendants cited "specific" FAA and EPA orders, *contra* Ex. 1, at 14, setting flight paths, approaches, and altitudes for Sea-Tac, as well as emissions standards—all of which are factually intertwined with Plaintiffs' allegations. *See supra* pp. 4-9; Dkt. 49, at 3, 5; Dkt. 43 ¶¶ 57-59, 63 (alleging "close association between airplane landing paths" and aircraft altitude "and fine particulate matter contamination").[8] Defendants thus argued that Plaintiffs' suit must be dismissed under the collateral-attack doctrine because challenges to the "intertwined" agency orders could be brought only in a federal court of appeals. *Tur*, 104 F.3d at 292; *see* 49 U.S.C. § 46110; 42 U.S.C. § 7607(b)(1).

---

[8] Under this Court's precedent, aviation "agency rulemakings" qualify as "order[s]" reviewable only under 49 U.S.C. § 46110. *Magassa v. Mayorkas*, 52 F.4th 1156, 1165-66 (9th Cir. 2022); *see also* 42 U.S.C. § 7607(b)(1) (agency "action[s]" "promulgating ... emission standard[s]" reviewed in federal courts of appeals).

Unlike *McKay* and *Krauss*, however, the district court declined to apply the collateral-attack doctrine on the pleadings. It held that it was too early "for the Court to conclude that Plaintiffs' state-law claims are inescapably intertwined with the review of a particular agency order." Ex. 1, at 14. But in *McKay*, as here, "plaintiffs den[ied] [that] they challenge[d] the validity of the FAA order authorizing the flight paths." 2016 WL 7425927, at *7. Nonetheless, *McKay* found that even if "Plaintiffs' claims do not at first blush implicate a federal question," they were "inescapably intertwined with a review of the procedures and merits surrounding" the FAA's orders, since the "genesis of [their] complaints is the flight paths." *Id.* (citation omitted). A reasonable jurist could easily reach the same conclusion here since the complaint repeatedly ties "aircraft flight paths" to the resulting emissions. Dkt. 43 ¶ 61.

The district court tried to distinguish *McKay* and *Krauss* as involving requests to "enjoin specific flight paths" or as suits against a federal "agency." Ex. 1, at 14-15. But both *McKay* and *Krauss* held that under this Court's precedent, "damages claims," like those Plaintiffs bring here, were themselves "inescapably intertwined" with FAA flight-path orders. *Krauss*, 2016 WL 1162028, at *3-4 (quoting *Americopters, LLC v. FAA*,

19

441 F.3d 726, 736 (9th Cir. 2006)); *see McKay*, 2016 WL 7425927, at \*7. And *McKay* and *Krauss* both dismissed claims—again, like those here— against individual airlines or local governmental entities. *Krauss*, 2016 WL 1162028, at \*3; *McKay*, 2016 WL 7425927, at \*3, \*7. As *Krauss* explained, "any 'objections or claims' that challenge the lawfulness of [*non-federal defendants*'] *mere compliance*" with the FAA's flight-path orders "constitute 'impermissible collateral attacks' against … the FAA's decision to implement the [flight paths]." 2016 WL 1162028, at \*3 (emphasis added; citation omitted). That is no different from what Plaintiffs claim here since they seek to hold Defendants responsible under state law for *compliance* with federally mandated regulations.

The district court posited that it could not "decide whether the [Airlines] have complied with FAA and EPA orders" on a motion to dismiss. Ex. 1, at 15. But Plaintiffs' complaint contains *no* allegations that Defendants violated FAA or EPA orders on flight paths, aircraft design, or emissions standards. Thus, the question of compliance with these orders is not presented here. Regardless, in *McKay*, the district court found that "whether or not [defendants] comply with FAA orders," the "genesis" of plaintiffs' harms "is the flight paths," and thus their damages claims

20

were "inescapably intertwined" with review of the FAA's flight path orders. 2016 WL 7425927, at *7. That reasoning applies with equal force here.

### B. At A Minimum, Reasonable Minds Differ On The Applicability Of Express Preemption.

*Airline Deregulation Act.* The ADA expressly preempts any state "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). This provision is "deliberately expansive": Any suit "having a connection with" or "bear[ing] a 'reference to'" airline rates, routes, or services is preempted, even if "the effect is only indirect" and regardless of whether the state standard is "consistent" or "inconsistent" with federal law. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 386-88 (1992) (citations omitted).

Plaintiffs' claims should be dismissed now under the ADA's expansive preemptive sweep. Plaintiffs expressly identify the Airlines' routes and provision of service to Sea-Tac as the cause of their alleged harms. *See, e.g.*, Dkt. 43 ¶¶ 3-4, 8, 27, 58-59, 61-66, 67 n.9. Yet the district court, while acknowledging that these allegations "about flight frequency and Plaintiffs' proximity to the airport" are "certainly relevant," rejected De-

21

fendants' ADA preemption defense as "premature and requir[ing] factual findings." Ex. 1, at 24.

That conclusion conflicts with the decisions of other courts. In cases like this, where the complaint's allegations necessarily relate to a "price, route, or service," 49 U.S.C. § 41713(b)(1), courts regularly apply ADA preemption on the pleadings. Notably, the Supreme Court in *Wolens* and *Ginsberg* reversed decisions at the motion-to-dismiss stage that state-law claims were not sufficiently "relate[d] to" "rates, routes, and services" under the ADA. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 226-27 (1995); *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 279, 284-85 (2014).[9] In *Wolens*, the Supreme Court "satisfied" itself in *three sentences* that an air carrier's changes to provisions of its frequent flyer program regarding "mileage credits" and "upgrades" "relate[d] to 'rates'" and "'services,'" finding no need to "dwell on the question." 513 U.S. at 226. Likewise, in *Ginsberg*, the Supreme Court readily held that a single customer's claims challenging termination from the elite level of a frequent flyer program "clearly"

---

[9] The lower court opinions demonstrate that *Ginsberg* and *Wolens* were reviewed on motions to dismiss. *See Ginsberg v. Nw., Inc.*, 695 F.3d 873, 875 (9th Cir. 2012); *Wolens v. Am. Airlines, Inc.*, 626 N.E.2d 205, 206 (Ill. 1993).

had a "connection with" the "airline's 'rates'" and "services." 572 U.S. at 284.

Courts in this Circuit and elsewhere have similarly resolved the ADA's "relate to" inquiry on the pleadings. For example, in *Fudge v. Delta Air Lines, Inc.*, 2024 WL 4445985 (C.D. Cal. Oct. 4, 2024), a court dismissed as preempted claims that a carrier improperly disclosed consumers' personal information entered on its website, reasoning that the "connection between Plaintiffs' claims and [airline's] services is clear"— "online booking" is "connected directly to 'access to flights.'" *Id.* at *4; *see also, e.g.*, *Korean Air Lines Co.*, 642 F.3d at 691-98 ("Because Plaintiffs allege a price-fixing conspiracy, their claims are plainly related to a price of an air carrier[.]"); *Witty*, 366 F.3d at 382-83 (holding in certified appeal that tort claim alleging air carrier "was negligent in failing to provide adequate leg room" was preempted "[s]ince requiring more leg room would necessarily reduce the number of seats on the aircraft" and thus "impose a standard 'relating to price'"); *Mesa Airlines*, 219 F.3d at 608 (explaining in certified appeal that "tort claims" regarding contracts with regional air carriers "relate to an air carrier's routes—they concern which carriers fly to which destinations from which airports").

23

As in those decisions, ADA preemption can be resolved on the pleadings here. Plaintiffs allege purported pollution caused by "flight paths" over Plaintiffs' properties as aircraft "take off from and land" at Sea-Tac. Dkt. 43 ¶¶ 50, 59, 61. Thus, their claims both bear "reference" to and are plainly "connect[ed] with" the Airlines' routes and services, *Morales*, 504 U.S. at 384, because liability hinges on the Airlines' "courses of travel" and "provision of air transportation to and from [Sea-Tac] at various times," *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265-66 (9th Cir. 1998) (en banc).

The district court nevertheless ruled it is not "self-evident" that the Airlines "would be impermissibly bound 'to a particular price, route, or service' if Plaintiffs succeed." Ex. 1, at 24 (citation omitted). But this Court has cautioned that "common-law claims typically regulate behavior by imposing broad standards of conduct," and "[i]t therefore does not make sense in [the common-law] context to ask whether a claim 'binds' [a party] to a particular price, route or service." *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1025 (9th Cir. 2020). In any event, by imposing tort liability on the Airlines, the practical effect of Plaintiffs' claims necessarily would be to restrict—if not foreclose—the Airlines'

24

flights to Sea-Tac and thus "bind[]" the Airlines to different routes that avoid Plaintiffs' properties. *Ginsberg*, 572 U.S. at 282; *see also Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008) (damages are "designed to be[] a potent method of governing conduct" (citation omitted)).

*The Clean Air Act.* Under Section 233 of the CAA, no State "may adopt or attempt to enforce *any* standard *respecting* emissions of *any* air pollutant from any aircraft or engine thereof *unless such standard is identical to a standard* applicable to such aircraft under this part." 42 U.S.C. § 7573 (emphases added). This Court has held that the CAA preempts every state standard that would "affect[] the design, structure, operation, or performance of the [aircraft or] aircraft engine." *California v. Dep't of Navy*, 624 F.2d 885, 888 (9th Cir. 1980).

The district court cited *Navy* to reject Defendants' CAA express preemption argument, reasoning that "there may be" other "ways of controlling emissions," apart from "aircraft alterations." Ex. 1, at 26. But Plaintiffs' attempt to hold Defendants liable under state tort law for purported emissions, Dkt. 43, at 1, necessarily seeks to enforce a state "standard respecting emissions of … air pollutant[s]" that is not identical to EPA regulations, 42 U.S.C. § 7573. Moreover, unlike *Navy* where the

25

engines at issue were stationary—housed on the ground in concrete test cells that could be altered to reduce emissions without changing the design of the engines—the Airlines' aircraft are *in flight* when they release the complained-of emissions, so any alterations to reduce emissions would have to be made to the aircraft or engines—which *Navy* expressly forbids. 624 F.2d at 886-89. And most importantly, because no court has addressed whether Section 233 of the CAA preempts state law under which a plaintiff seeks to hold airlines liable for their alleged in-flight aircraft emissions, this question is one of "first impression" that warrants review now. *Couch*, 611 F.3d at 633 (citation omitted).

## C. At A Minimum, Reasonable Minds Differ On The Applicability Of Field Preemption.

Courts "generally analyze[]" field "preemption by looking to the pervasiveness of federal regulations in the specific area covered by the tort claim or state law at issue." *Martin ex rel. Heckman v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 809 (9th Cir. 2009). Defendants argued that Plaintiffs' claims are preempted because "pervasive" regulation shows that Congress authorized the FAA and EPA to occupy the field of "aircraft operations," encompassing "airspace management and flight paths," aviation "safety," and "aircraft emissions and design." Dkt. 49, at 20-25; *see*

26

*supra* pp. 4-9. The district court, however, narrowed the field to "airplane pollution and its effects on people and property," and then concluded that this Court's decision on CAA express preemption in *Navy* barred field preemption. Ex. 1, at 28. Reasonable jurists could certainly differ with that conclusion.

The district court narrowed the field to "airplane pollution" "because Plaintiffs allege that they were harmed by pollution from airplanes." Ex. 1, at 28. But it is inappropriate to define the field based on the *labels* Plaintiffs attach to their claims, rather than the "*conduct*" that their claims seek to regulate. *Arizona v. United States*, 567 U.S. 387, 399 (2012) (emphasis added). In the analogous context of noise pollution from aircraft, the Supreme Court and this Court have construed the applicable field to include "airspace management" where local laws sought to address pollution by regulating conduct pertaining to the path and timing of flights. *City of Burbank*, 411 U.S. at 627, 635; *San Diego Unified Port Dist. v. Gianturco*, 651 F.2d 1306, 1311, 1316 (9th Cir. 1981) (per curiam). Here, because Plaintiffs' objections to "airplane pollution" would similarly regulate conduct involving flight paths, aircraft design, and emissions standards, the relevant field encompasses each of these areas.

Whether the field is broadly or narrowly defined, the district court's conclusion that federal law does not occupy the field is impossible to reconcile with controlling precedent. The Supreme Court and this Court have long held that "the pervasive control vested" in the FAA and EPA to regulate "airspace management," including through "a variety of regulations relating to takeoff and landing procedures and runway preferences," "leave[s] no room for … local controls." *City of Burbank*, 411 U.S. at 627, 638; *see Gianturco*, 651 F.2d at 1311. The district court did not cite this dispositive precedent.

But even if the field were limited to aircraft emissions, the Supreme Court has recognized that Congress "pre-empted the field so far as emissions from airplanes are concerned." *Washington v. Gen. Motors Corp.*, 406 U.S. 109, 115 (1972). Considering the bevy of EPA and FAA regulations governing aircraft emissions and aircraft engine design, *see supra* pp. 4-9, that statement—even if dicta, Ex. 1, at 29—is correct and outcome-determinative.

The district court reasoned that *Navy*—which recognized the possibility of regulating *buildings* housing aircraft test engines, 624 F.2d at 888—allows some state regulation of aircraft engine emissions and thus

28

forecloses field preemption.  Ex. 1, at 28.  But reasonable minds could read *Navy* to *endorse* field preemption here.  Notably, *Navy* favorably cited a passage of the underlying district-court opinion stating that "[t]his Court does not, of course, dispute the fact that *Congress has clearly and pervasively preempted the field of aircraft emissions.*"  *California v. Dep't of Navy*, 431 F. Supp. 1271, 1288 (N.D. Cal. 1977) (emphasis added), *aff'd*, 624 F.2d at 888 (district court's opinion was "excellen[t]").  Moreover, state regulation of emissions from buildings on the ground is entirely different from the federally regulated emissions of aircraft in flight.  Any uncertainty over the proper way to construe this Court's decision in *Navy* heightens the propriety of interlocutory review.[10]  Before Plaintiffs' far-reaching claims are permitted to reach discovery, this Court should authoritatively resolve whether this federally regulated field leaves any role for state-law tort claims.

## CONCLUSION

The petition for permission to appeal should be granted.

---

[10] For similar reasons, reasonable minds could differ with the district court's conflict-preemption analysis, which also relied on *Navy*.  *See* Ex. 1, at 30.

Dated: February 28, 2025

Respectfully submitted.

*/s/ Daniel W. Nelson*

Shay Dvoretzky
John H. Beisner
Parker Rider-Longmaid
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Ave., N.W.
Washington, D.C. 20005
(202) 371-7000

*Attorneys for Petitioner*
*Alaska Air Group*

Beth S. Ginsberg
Maren R. Norton
Rita V. Latsinova
Vanessa Soriano Power
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
(206) 624-0900

*Attorneys for Petitioner*
*Port of Seattle*

Daniel W. Nelson
Amir C. Tayrani
Stacie Fletcher
Jessica L. Wagner
Joseph Edmonds
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500
dnelson@gibsondunn.com

David Balser
Paul J. Watford
David Willingham
Arwen R. Johnson
Madison H. Kitchens
Kelly Perigoe
KING & SPALDING LLP
11180 Peachtree St., NE
Atlanta, GA 30309
(404) 572-4600

Malaika M. Eaton
Gregory J. Hollon
MCNAUL EBEL NAWROT &
HELGREN PLLC
600 University Street, Suite 2700
Seattle, WA 98101
(206) 467-1816

*Attorneys for Petitioner*
*Delta Air Lines, Inc.*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this Petition for Permission to Appeal complies with the type-volume limitation of Ninth Circuit Rules 5-2(b) and 32-3(2) because it contains 5,598 words, excluding the parts of the petition exempted by Federal Rules of Appellate Procedure 5(c) and 32(f). This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

I hereby further certify that this Petition for Permission to Appeal complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface of 14 points in New Century Schoolbook font.

I hereby further certify that all other parties on whose behalf this filing is submitted concur in the filing's content.

Dated: February 28, 2025          */s/ Daniel W. Nelson*
                                 Daniel W. Nelson
                                 *Counsel for Delta Air Lines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 28th day of February 2025, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the Court's CM/ECF system. All parties have consented in writing to service via email, and I further certify that I served the foregoing brief on this 28th day of February 2025 to all parties listed below via email:

Abigail D. Pershing
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
abigailp@hbsslaw.com

Nathan Emmons
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
nathane@hbsslaw.com

Steve W. Berman
Shayne C. Stevenson
Shelby R. Smith
Martin D. McLean
Jacob P. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
steve@hbsslaw.com
shaynes@hbsslaw.com
shelby@hbsslaw.com
martym@hbsslaw.com
jakeb@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

Dated: February 28, 2025

 _/s/ Daniel W. Nelson_ 
Daniel W. Nelson
*Counsel for Delta Air Lines, Inc.*